UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PATTI JO GRAW,                                )
                                             )
              Plaintiff,                      )
                                             )
      v.                                      )        No. 4:25 CV 1033 RWS
                                             )
ELI LILLY AND COMPANY,                        )
                                             )
              Defendant.                      )

## MEMORANDUM AND ORDER

Plaintiff Patti Jo Graw ("Graw") filed this lawsuit and proceeds *pro se*. She brings this action against Defendant Eli Lilly and Company ("Eli Lilly"), alleging violations of state and federal law related to her participation in a clinical drug trial. Eli Lilly moves to dismiss Graw's Amended Complaint pursuant to Rules 12(b)(6) and 12(b)(5) of the Federal Rules of Civil Procedure. For the reasons set forth below, I will grant Eli Lilly's Motion.

### Background

Taken as true for the purposes of this motion, Graw's Amended Complaint against Eli Lilly alleges the following facts. *See* ECF. No. 6 at 7. Graw participated in a diabetic clinical trial conducted by Study Metrix, LLC ("Study Metrix") in St. Peters, MO, from August 2023 through December 18, 2023. *Id.* at ¶ 1. The clinical trial was sponsored, overseen, and funded by Eli Lilly. *Id.* Under

1

Eli Lilly's trial protocol, Graw was repeatedly administered an investigational drug. *Id.* at ¶ 2. She reported severe and worsening adverse effects, including vomiting up to 18 times per day, extreme dehydration, critically low potassium, and weakness. *Id.* Study Metrix staff, acting under Eli Lilly's authority, instructed Graw to continue the drug and discouraged hospital visits. *Id.*

According to Graw, Eli Lilly, as sponsor of the trial, failed to ensure proper participant monitoring, ignored urgent medical warnings, and allowed its contracted trial site to withhold necessary care. *Id.* at ¶ 3. She alleges that this neglect continued even after she submitted her written resignation from the study on December 18, 2023. *Id.* She alleges that at one point in time, her attempts to reach trial staff in urgent distress went unanswered because the Study Metrix office was preparing for a Christmas party, as allegedly admitted by Dr. Timothy Smith. *Id.* at ¶ 4. She claims that being unable to reach Study Metrix staff because they were allegedly preparing for an office Christmas party was a gross disregard for participant safety and directly violated federal clinical trial standards. *Id.*

Graw further alleges that she required three emergency room visits and hospitalization at Progress West Hospital. After these visits, she alleges she was diagnosed with esophagitis, gallstones, chronic dry mouth and eyes, and a benign kidney tumor. *Id.* at ¶ 5. She alleges that none of these conditions existed before the trial. *Id.* Her primary care provider allegedly confirmed that these conditions

arose only after Graw's exposure to Eli Lilly's drug.  *Id.*  She alleges that her injuries are permanent and require lifelong medical care and that they were directly caused by Eli Lilly's negligence and reckless conduct in overseeing the clinical trial.  *Id.* at ¶ 6.

In addition to reviewing the allegations of her Complaint, it is important to identify what Graw's Complaint does not allege.  Graw does not allege that privity of contract or some other legally binding agreement existed between Eli Lilly and Study Metrix.  She does not allege that she ever directly contacted Eli Lilly regarding her condition.  Nor does she allege that she sought medical advice and treatment directly from Eli Lilly or any of its employees.  Graw does not allege that she had a physician-patient relationship with Eli Lilly, and nowhere does she allege that Eli Lilly was the medical practitioner responsible for providing her with informed consent.

Additionally, Graw does not allege that Eli Lilly engaged in extreme and outrageous conduct that was only intended to cause her emotional distress or that such conduct caused her physical symptoms.  She does not allege that she incurred injuries because of a defect in the drug that was administered during the clinical trial.  Nor does she allege that Eli Lilly should be held strictly liable for a defective drug or was negligent in manufacturing it, designing it, or failing to make certain warnings.  Moreover, Graw does not allege that Eli Lilly violated any particular

FDA regulation, and she does not allege that a specific FDA regulation gives her a private right to sue or creates a legal duty on behalf of Eli Lilly.

In her original Complaint filed in this Court, Graw brought claims against Eli Lilly and Study Metrix, asserting diversity jurisdiction under 28 U.S.C. § 1332. ECF. No. 1. On July 15, 2025, I entered an Order directing Graw to show cause why her action should not be dismissed for lack of subject matter jurisdiction because both Graw and Study Metrix are citizens of Missouri, which would defeat diversity jurisdiction under § 1332. ECF. No. 3. Graw responded by requesting permission to voluntarily dismiss Study Metrix and file an amended complaint. ECF. No. 4. I granted Graw's request, and she filed her Amended Complaint on August 13, 2025.

In support of its motion, Eli Lilly notes that Graw filed a petition against Study Metrix Research, LLC and Dr. Timothy Smith in the Circuit Court of St. Charles County. Eli Lilly states that on October 6, 2025, the state court dismissed Graw's initial petition for failure to state a claim. ECF. No. 13 at 5 n.3. Eli Lilly fails to mention, however, that the state court granted Graw leave to amend her petition prior to December 1, 2025. The state court case is ongoing. *See* Case No. 2511-CC00920.

In her Amended Complaint, Graw brings seven claims against Eli Lilly: negligence (Count I); medical malpractice (Count II); lack of informed consent

4

(Count III); intentional infliction of emotional distress (Count IV); reckless

infliction of emotional distress (Count V); products liability (Count VI); and

violations of FDA clinical trial regulations (Count VII).  ECF. No. 6 at 5.

Graw seeks actual damages of $2,500,000 for "past current and future

medical care loss of income and diminished quality of life" and punitive damages

of $5,000,000.  *Id.* at 7.  She also seeks "compensation for emotional distress pain

and suffering."  *Id.* at 7-8.

On November 21, 2025, Eli Lilly moved to dismiss Graw's Amended

Complaint for failure to state a claim pursuant to Rule 12(b)(6) and for insufficient

service of process pursuant to Rule 12(b)(5).[1]

## Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal

sufficiency of the complaint.  In ruling on such a motion, I must accept all factual

allegations in the complaint as true and view them in the light most favorable to the

plaintiff.  *Hager v. Arkansas Dep't. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

But I may not "presume the truth of legal conclusions couched as factual

---

[1] As an alternative ground for dismissal, Eli Lilly moves to dismiss pursuant to Rule 12(b)(5) for insufficient service of process.  ECF. No. 12 at 13-14.  Eli Lilly states that it was not served a copy of the Amended Complaint and was instead served only a copy of the original Complaint in this case. Because I have evaluated the merits of Eli Lilly's Rule 12(b)(6) motion, I will not direct the Court to re-serve Eli Lilly. "[W]hen service is improper, it is within the district court's discretion to either (1) dismiss the suit, or (2) retain the suit, quash service, and allow the plaintiff to re-serve the defendant."  *United States ex rel. Murrill v. Midwest CES, LLC*, No. 4:21-CV-00371-DGK, 2023 WL 2815863, at *3 (W.D. Mo. Apr. 6, 2023) (citing *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 886 (8th Cir. 1996); *see also Lamb v. Bank of Am., N.A.*, No. 4:11-CV-819 CAS, 2012 WL 87146, at *2 (E.D. Mo. Jan. 11, 2012) (considering defendants' arguments for insufficient service of process waived "because defendants also move to dismiss plaintiffs' claims on the merits").

allegations." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Although I also must generally ignore materials outside the pleadings, I may consider "materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need not provide "detailed factual allegations" but must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible on its face when the plaintiff pleads sufficient facts to allow me to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This requires a complaint to contain enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A threadbare recital of the elements of a cause of action, supported merely by conclusory allegations, is not sufficient. *Iqbal*, 556 U.S. at 678.

Pro se complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  However, pro se pleadings must still allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).  A "complaint should be found to raise a claim only 'if the essence of an allegation is discernable, even though it is not pleaded with legal

nicety.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)).  The Court must weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless.  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

### Discussion

Eli Lilly argues that Graw's Amended Complaint should be dismissed because it contains sparse, conclusory allegations that fail to state a plausible claim for relief against Eli Lilly.  Eli Lilly suggests that I may not consider new factual allegations raised in Graw's Response to its motion to dismiss.  ECF. No. 21 at 8 (citing *Al-Saadoon v. Barr*, 973 F.3d 794, 805 (8th Cir. 2020); *Marin v. TVS Supply Chain Sols. N. Am., Inc.*, No. 4:24-CV-00901-JAR, 2024 WL 4826792, at *6 n.5 (E.D. Mo. Nov. 19, 2024)).

However, the Eighth Circuit held that when a plaintiff is proceeding *pro se*, the district court must consider not only allegations made in the operative complaint, but also new allegations made in a plaintiff's response to a motion to dismiss.  *See, e.g.*, *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 362 (8th Cir. 2003) (noting the "district court must consider allegations made in response to motion to dismiss"); *Anthony v. Runyon*, 76 F.3d 210, 214 (8th Cir. 1996) (finding the district court "should have considered the new allegations contained in the response to the motion to substitute and dismiss"); *Pratt v. Corr. Corp. of Am.*, 124 F. App'x 465,

466 (8th Cir. 2005) ("[T]he district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in…his response to defendants' motion to dismiss"); *Alexander v. Dep't of the Army - Army Bd. for Correction of Mil. Recs.*, No. 4:23-CV-1468-RHH, 2025 WL 2780908, at *4 (E.D. Mo. Sept. 30, 2025) ("[W]hen evaluating a motion to dismiss a pro se plaintiff's complaint, the Eighth Circuit requires district courts to consider both the allegations made in a complaint and the allegations in the plaintiff's response to the motion to dismiss.").

## A.    Count I: Negligence

Count I will be dismissed with prejudice.

Both Graw's Amended Complaint and her Response to Eli Lilly's motion are devoid of any allegations attempting to show that privity of contract or some other legally binding agreement existed between Eli Lilly and Study Metrix. She makes no allegations that she ever directly contacted Eli Lilly regarding her condition. Nor does she allege that she sought medical advice and treatment directly from Eli Lilly or any of its employees. The lack of these allegations is fatal to Graw's negligence claim.

To plead a claim for negligence under Missouri law, a plaintiff must plausibly allege "(1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; (3) proximate cause; and (4) injury to the plaintiff."

8

*Campbell v. Baxter Int'l, Inc.*, 697 S.W.3d 36, 42 (Mo. Ct. App. 2024) (citing

*Thornburg v. Federal Express Corp.*, 62 S.W.3d 421, 427 (Mo. App. W.D. 2001)).

First, I find that Graw fails to plausibly allege that Eli Lilly owed her a legal

duty. Graw attempts to show that Eli Lilly owed her a duty of care as the sponsor

of the clinical trial. Under Missouri law, "foreseeability alone is not enough to

establish a duty…there must also be some right or obligation to control the activity

which presents the danger of injury." *Stitt by Stitt v. Raytown Sports Ass'n, Inc.*,

961 S.W.2d 927, 930 (Mo. Ct. App. 1998). Graw alleges that Eli Lilly

"sponsored," "oversaw," and "funded" the trial and "failed to ensure proper

participant monitoring." ECF. No. 6 at 7. She further alleges that Study Metrix

staff were acting "under Eli Lilly's authority" and in accordance with "Eli Lilly's

trial protocol" in administering the drug and responding to her requests for medical

advice and treatment. *Id.* These allegations are merely conclusory statements

about Eli Lilly's alleged oversight role. Graw fails to plead any facts supporting

the claim that Eli Lilly had the right or obligation to direct her medical care solely

because she participated in one of its clinical trials. Graw does not cite any

authority that recognizes such a duty owed under Missouri law. *See, e.g.*, *Turner v.*

*ILG Techs.*, *LLC*, No. 2:21-CV-04192-NKL, 2022 WL 4543209, at *11 (W.D. Mo.

Sept. 28, 2022) (dismissing pro se plaintiff's complaint where she "failed to

sufficiently allege, beyond mere conclusory statements, that [defendant] owed a duty" under Missouri law).

Second, Graw's Amended Complaint does not contain sufficient facts to plead that an agency relationship existed between Eli Lilly and Study Metrix regarding the clinical trial.  Eli Lilly notes that Study Metrix is an "independent trial site" by design, which "ensure[s] the integrity and reliability of research results."  ECF. No. 13 at 3 n.2 (citing *Suthers v. Amgen Inc.*, 441 F. Supp. 2d 478, 487-88 (S.D.N.Y. 2006).  Even if Graw plausibly alleged that Eli Lilly "controlled" Study Metrix and its administration of the clinical trial, ["t]he right to control the alleged agent is not sufficient to establish an agency relationship." *Wallace v. Pharma Medica Rsch., Inc.*, No. 4:18-CV-1859 PLC, 2021 WL 516768, at *5 (E.D. Mo. Feb. 11, 2021) (citing *State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. 2002)).  To plead the existence of an agency relationship under Missouri law, a plaintiff must plausibly allege "(1) the agent had the authority to alter legal relations between the principal and a third party; (2) the agent was a fiduciary with respect to matters within the scope of the agency; and (3) the principal had the right to control the conduct of the agent with respect to matters entrusted to the agent." *Id.* at *4.

Here, Graw does not sufficiently plead any of the essential elements of an agency relationship.  Graw's allegations that Study Metrix was a "contracted trial site" and Eli Lilly had "oversight authority" are vague and unsupported legal

conclusions. *See, e.g.*, *Affordable Communities of Missouri v. Fed. Nat. Mortg. Ass'n*, 714 F.3d 1069, 1074 (8th Cir. 2013) ("We are also unpersuaded by Affordable's 'labels and conclusions,' that '[a]t all relevant times, ... EFA acted as an agent of Fannie Mae.'") (quoting *Twombly*, 550 U.S. at 555); *Philadephia Indem. Ins. Co. v. Angi Inc.*, 642 F. Supp. 3d 899, 905 (E.D. Mo. 2022) (finding plaintiff's bare assertions that defendant "directed and controlled [alleged agent] in all aspects of the…work" could not survive a Rule 12(b)(6) motion). Graw's allegations that Study Metrix and its staff "acted under Eli Lilly's authority" and Eli Lilly "allowed" Study Metrix to withhold care constitute "threadbare recitals" of only one of the elements required to establish an agency relationship under Missouri law. *Twombly*, 550 U.S. at 555. Without more, I may not presume any liability would attach to Eli Lilly for Study Metrix or its staff's alleged misconduct.

Third, after carefully considering the new allegations made in Graw's Response to Eli Lilly's motion to dismiss, I find that Graw still fails to raise the right to relief above a speculative level. Accepting as true that Graw reported her worsening condition *to Study Metrix and its staff physician*, Graw has not provided any facts in her Amended Complaint or Response *connecting Eli Lilly* to the allegedly negligent treatment she received. In her Response, Graw claims that Eli Lilly owed her a duty under the "law governing clinical trials." ECF. No. 18 at 4. But she fails to cite any federal regulations or a duty arising under the Missouri

common law of torts.  *See Zeman v. Williams*, No. CIV.A. 11-10204-GAO, 2014 WL 3058298, at *3 (D. Mass. July 7, 2014) (concluding that "federal regulations do not themselves authorize a cause of action by a [clinical trial participant] against a sponsor").[2]  Graw's reference to unspecified "federal regulations" is not sufficient to plead that Eli Lilly either directly owed her a duty or was somehow vicariously liable for the actions of Study Metrix and its staff.

Graw's Response also asserts that she does not have to "prove the precise contours of Lilly's internal control mechanisms or contractual arrangements with Study Metrix," and she claims "[d]iscovery is required to determine the extent of Lilly's control, knowledge, and failure to act." ECF. No. 18 at 4.  Graw is still required, however, to "[plead] enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Twombly*, 550 U.S. at 556; *see also Raineri Constr., LLC v. Taylor*, No. 4:12-CV-2297 CEJ, 2015 WL 1526145, at *2 (E.D. Mo. Apr. 2, 2015) (stating "the purpose of discovery is not to assist a plaintiff in articulating a plausible claim in drafting the complaint") (citing *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir.1981)).

---

[2] The FDA regulations governing clinical trials outline the responsibilities of clinical trial investigators and sponsors. *See* 21 C.F.R § 312.50-.70.  Although not specifically cited in Graw's Amended Complaint or Response, these regulations hold that investigators are responsible "for protecting the rights, safety, and welfare of subjects under the investigator's care."  21 C.F.R. § 312.60; *see also Kernke v. The Menninger Clinic, Inc.*, 173 F. Supp. 2d 1117, 1124 (D. Kan. 2001) ("All of the duties alleged by plaintiffs in this case fall within the purview of the [] defendants as the investigator conducting the [clinical study]; the duties do not rest with [the sponsor].") (citing 21 C.F.R. § 312.60).

However, I find that Graw offers no well-pleaded facts raising a reasonable expectation that discovery would reveal a contract between Eli Lilly and Study Metrix. She claims Eli Lilly was responsible for "protocol design, safety monitoring, adverse event reporting, and ensuring that investigators comply with regulatory and ethical obligations to protect human subjects." ECF. No. 18 at 4. She also states her adverse reactions were "reported repeatedly" but does not identify when or to whom she made her reports.[3] As with Graw's Amended Complaint, these allegations are conclusory, threadbare recitals of the elements of agency and negligence. The absence of any specific allegations regarding Eli Lilly being in privity with Study Metrix or Graw directly communicating with Eli Lilly is fatal here.

Because I find that the allegations in Graw's Amended Complaint and her Response fail to plead the essential elements of a negligence claim, Count I will be dismissed with prejudice.

## B.    Count II: Medical Malpractice

Count II of Graw's Amended Complaint will be dismissed with prejudice because Graw does not allege that she was in a physician-patient relationship with Eli Lilly. The fact that Graw did not file the mandatory healthcare affidavit

---

[3] Graw's Amended Complaint indicates these reports about her condition were only made to Study Metrix staff, including one of its staff physicians. ECF. No. 6 at 7.

required by Missouri law is not fatal to her claim.  To state a claim for medical

malpractice under Missouri law, a plaintiff must plausibly allege "(1) proof that

defendant's act or omission failed to meet the requisite standard of care; (2) proof

that the act or omission was performed negligently; and (3) proof of a causal

connection between the act or omission and the injury sustained by the plaintiff."

*Brickey v. Concerned Care of Midwest, Inc.*, 988 S.W.2d 592, 596 (Mo. Ct. App.

1999) (citation omitted).  "For a claim based on medical negligence, a physician's

duty to a plaintiff is derived from a physician-patient relationship.  Such a

relationship is essential to a claim for medical negligence."  *Brown v. Bailey*, 210

S.W.3d 397, 404 (Mo. Ct. App. 2006) (internal citation omitted).

Here, Graw fails to provide any facts that could support the existence of a

physician-patient relationship between Graw and Eli Lilly.  Eli Lilly is a

pharmaceutical company and was not directly responsible for administering

treatment during the study.  See ECF. No. 21 at 2.  Graw has not plausibly alleged

that Eli Lilly took over the provision of healthcare services or took on any other

physician-patient role as sponsor of the study.  Any alleged physician-patient

relationship between Graw and Study Metrix or its staff cannot be imputed to Eli

Lilly.  Absent any plausible allegations about a physician-patient relationship,

Graw cannot state a claim for medical malpractice under Missouri law.  *See*

*Meekins v. St. John's Reg'l Health Ctr., Inc.*, 149 S.W.3d 525, 532 (Mo. Ct. App.

2004) ("[A]bsent that physician/patient relationship, a medical malpractice claim must fail.").

Additionally, Eli Lilly asserts that Graw failed to file the mandatory healthcare affidavit required by Missouri law to bring a medical malpractice claim. ECF. Nos. 13 at 14, 21 at 12. In Missouri, "[t]he legislature mandates healthcare affidavits for all medical-malpractice claims [] as a precondition to a valid suit." *Ferder v. Scott*, 556 S.W.3d 100, 102 (Mo. Ct. App. 2018) (citing Mo. Rev. Stat. § 538.225). The affidavit must state that the plaintiff "has obtained the written opinion of a legally qualified healthcare provider" that certifies the merit of the claim. Mo. Rev. Stat. § 538.225. Eli Lilly argues that the 90-day statutory deadline for Graw to file a healthcare affidavit has expired, requiring dismissal of her claim.[4] The Supreme Court recently held in *Berk v. Choy* that a similar law in Delaware, which required plaintiffs to file affidavits of merit as a precondition to bringing medical malpractice claims, does not apply in federal court. No. 24-440, 2026 WL 135974 (U.S. Jan. 20, 2026). The Court found Delaware's affidavit of merit requirement inconsistent with the federal pleading rules. "Under Rule 8, factual allegations are sufficient, but under the Delaware law, the plaintiff needs evidence too." *Id.* at *4. As a result, the Court held a plaintiff's failure to file such

---

[4] Graw filed her Amended Complaint on August 13, 2025, so the 90-day statutory deadline to file a healthcare affidavit passed on November 11, 2025.

15

an affidavit is not a ground for dismissal on a Rule 12(b)(6) motion. *Id.* ("[Rule 12] "provides only one ground for dismissal based on the merits: 'failure to state a claim upon which relief can be granted.'") (quoting Fed. R. Civ. P. 12(b)(6)).  I therefore find Graw's failure to file an affidavit of merit within the 90-day window is not a proper ground for dismissal of her claim.

But because Graw's fails to plead any facts showing a physician-patient relationship existed between her and  Eli Lilly, Graw's medical malpractice claim will be dismissed with prejudice.

## C.    Count III: Lack of Informed Consent

Count III of Graw's Amended Complaint will be dismissed with prejudice because she does not allege that Eli Lilly was the medical practitioner responsible for providing her with informed consent.

Under Missouri law, a claim for lack of informed consent has three elements: "1) nondisclosure, 2) causation, and 3) injury." *Wilkerson v. Mid-Am. Cardiology*, 908 S.W.2d 691, 696 (Mo. Ct. App. 1995).  Graw's Amended Complaint contains no allegations supporting her lack of informed consent claim.  In her Response, Graw alleges that "she was not fully informed of the risks associated with the investigational drug and that the ongoing risks were not adequately communicated to her as her condition worsened."  ECF. No. 18 at 4.  She states that "the material

risk information was withheld or minimized, impairing her ability to make informed decisions about continued participation." *Id.*

I find that these allegations are insufficient to state a claim for lack of informed consent. To show lack of informed consent, "a plaintiff must show that the disclosures made by the defendant do not meet the standard of what a reasonable medical practitioner would have disclosed under the same or similar circumstances." *Wilkerson,* 908 S.W.2d at 696 (citing *Aiken v. Clary*, 396 S.W.2d 668, 675 (Mo.1965)). Graw fails to identify the specific information that was allegedly not disclosed to her prior to or during her participation in the clinical trial. She does not provide any allegations regarding the standard of what a reasonable medical practitioner would have disclosed to her under the same circumstances. Even if she had, Graw has not shown that Eli Lilly is a "medical practitioner" as defined by Missouri law. To adequately plead lack of informed consent, a plaintiff must plausibly allege "whether a reasonable person in plaintiff's position would have consented to the procedure had the treating medical practitioner made the proper disclosures of the risks and alternatives." *Ball v. Allied Physicians Grp., L.L.C.*, 548 S.W.3d 373, 388 (Mo. Ct. App. 2018). Graw has not done so here. Neither her Amended Complaint nor her Response allege whether a reasonable person in her position would have consented to the treatment had the "proper" disclosures been made.

Moreover, Graw fails to plausibly allege why Eli Lilly, as opposed to Study Metrix or its staff physician, would have been responsible for disclosing the information.  As Eli Lilly points out, in the clinical trial context, the investigator is typically responsible for obtaining the participants' informed consent.  *See Butler v. Juno Therapeutics, Inc.*, No. CV H-18-898, 2019 WL 2568477, at *5 (S.D. Tex. June 21, 2019) ("Federal regulations require clinical trial sponsors to inform participants of reasonably known risks *through* investigators, such as the [physician responsible for administering treatments to participants].") (emphasis added); *see also* 21 C.F.R. § 312.60 ("An investigator shall obtain the informed consent of each human subject to whom the drug is administered[.]").[5]  Graw has not sufficiently alleged why she should be able to sustain a lack of informed consent claim against *Eli Lilly*.

For these reasons, I will dismiss Graw's lack of informed consent claim with prejudice.

---

[5] When Graw filed her original Complaint on July 14, 2025, she attached as an exhibit a copy of the consent form with her signature entitled "Study Participant Information and Consent Form and Authorization to Use and Disclose Protected Health Information."  ECF. No. 1-1.  She did not attach this form as an exhibit to her Amended Complaint, which is the operative complaint in this case.  *See* ECF. No. 6.  "It is well established that an amended complaint supersedes an original complaint in all relevant aspects."  *Pearson v. Gittemeier*, No. 2:19-CV-41 RLW, 2023 WL 2585957, at *2 (E.D. Mo. Mar. 21, 2023) (citing *Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014)).  I therefore did not consider the consent form in determining whether to dismiss Graw's claim.  *See id.* (deciding on a motion for summary judgment not to consider two written statements attached to plaintiff's First Amended Complaint and not the operative Fourth Amended Complaint).  Regardless, the consent form shows that many of the side effects Graw allegedly reported experiencing *were in fact disclosed. See* ECF. No. 1-1 at 16-17 (listing feeling sick to the stomach, decreased appetite, and throwing up as "very common" side effects and noting the risks associated with feeling sick to the stomach, such as dehydration and kidney failure).

### D.    Counts IV & V: Intentional Infliction of Emotional Distress and Reckless Infliction of Emotional Distress

Counts IV & V of Graw's Amended Complaint will be dismissed with prejudice.

Graw does not allege that *Eli Lilly* engaged in extreme and outrageous conduct that was only intended to cause her emotional distress or that such conduct caused her physical symptoms. Nor does she allege that Eli Lilly was in privity with Study Metrix and therefore liable for its conduct. The absence of these allegations is fatal to her emotional distress claim.

To plead an intentional infliction of emotional distress claim under Missouri law, a plaintiff must plausibly allege a number of essential elements: "(1) the defendant's conduct must be outrageous or extreme; (2) the defendant must act intentionally or recklessly; (3) there must be extreme emotional distress that results in bodily harm; (4) caused by the defendant's conduct; and (5) the conduct must be intended solely to cause extreme emotional distress to the victim." *Crow v. Crawford & Co.*, 259 S.W.3d 104, 119 (Mo. Ct. App. 2008). "[T]he conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Thomas v. Special Olympics Missouri, Inc.*, 31 S.W.3d 442, 446 (Mo. Ct. App. 2000). Moreover, "the emotional distress or mental injury

must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Bass v. Nooney Co.*, 646 S.W.2d 765, 772-773 (Mo. 1983).

In her Response, Graw alleges that the "extreme and outrageous conduct" by Eli Lilly consisted of "ignoring repeated emergency calls from a suffering clinical trial participant because staff were preparing for a holiday party, while Plaintiff was experiencing life-threatening symptoms." ECF. No. 18 at 4. However, in her Amended Complaint, Graw states that her "attempts to reach [Study Metrix] trial staff in urgent distress went unanswered because the office was preparing for a Christmas party, as admitted by Dr. Timothy Smith." ECF. No. 6 at 7. Graw again fails to explain how the alleged conduct of Study Metrix and its staff physician is attributable to Eli Lilly. For Eli Lilly to be held responsible for the alleged intentional infliction of emotional distress by Study Metrix and its staff, Graw would have to successfully plead that an agency relationship existed between Eli Lilly and Study Metrix and its staff. *See Maryland Cas. Co. v. Huger*, 728 S.W.2d 574, 579 (Mo. Ct. App. 1987) ("[A] principal or employer is held liable to a third person for a tort, even though not directed or commanded nor expressly authorized by the employer, provided that the employee or agent has committed such act while engaged in an activity falling within the scope of his authority or employment.") (citing 2 Mechem, *Agency*, § 1879 at 1461 (1914)); *see also Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. 1997) (finding "Diocese [(principal)] is not

20

liable under an agency theory" because "intentional infliction of emotional distress [is] not within the scope of employment of a priest [(agent)].").

Graw also fails to sufficiently plead the essential elements of the claim. She pleads no facts and cites no supporting case law to demonstrate that "ignoring repeated emergency calls" constitutes "extreme and outrageous conduct" as defined by Missouri law. *See, e.g., Hendrix v. Wainwright Indus.*, 755 S.W.2d 411, 412 (Mo. Ct. App. 1988) (finding that the "harassment of an employee for filing a complaint with [OSHA] is not only undesirable but illegal…however, it is not so outrageous as to go beyond all possible bounds of decency") (internal quotation omitted); *Sproaps v. SSM Health St. Louis Univ. Hosp.*, No. 4:23-CV-01243 RLW, 2024 WL 180860, at *3 (E.D. Mo. Jan. 17, 2024) (dismissing plaintiff's emotional distress claim because allegations that he was physically thrown out of the hospital did not "indicate that the conduct went beyond all possible bounds of decency"). Graw also fails to allege anywhere in her Amended Complaint or Response that such conduct was *only* intended to cause her emotional distress.

Because Graw's allegations are conclusory and she fails to plead the essential elements of an intentional infliction of emotional distress claim, I will dismiss Counts IV and V with prejudice.[6]

---

[6] Missouri law does not recognize a separate tort for reckless infliction of emotional distress. That the defendant acted recklessly satisfies the second element of an intentional infliction of emotional distress claim.

### E.    Count VI: Products Liability

Count VI of Graw's Amended Complaint will be dismissed with prejudice.

Although Graw lists "products liability" as one of the claims in her Amended Complaint, she provides no allegations supporting the claim in either her Amended Complaint or Response.  Her pleadings are devoid of any allegations that she incurred injuries because of a defect in the drug that was administered during the clinical trial.  She does not allege that Eli Lilly should be held strictly liable for a defective drug or was negligent in manufacturing it, designing it, or failing to make certain warnings.  Because I find that these allegations were never made, Graw cannot proceed on this claim.

"In Missouri, a plaintiff may bring a product liability claim under a theory of strict liability (by asserting claims for defective manufacture, defective design, or failure to warn) or a theory of negligence (by asserting claims for negligent manufacture, negligent design, or negligent failure to warn)." *Ameer v. Lyft, Inc.*, 711 S.W.3d 534, 542 (Mo. Ct. App. 2025).  Here, Graw fails to specify whether her claim is being brought under a strict products liability theory or a theory of negligence.  Each products liability theory has distinct elements under Missouri law that plaintiffs must prove.  *See generally id.*  Graw cannot sustain a products liability claim without making factual allegations under at least one of these theories.

22

Regardless, Graw's Response fails to mention nor seeks to defend the sufficiency of her products liability claim. As several courts in the Eighth Circuit have held, failure to respond to Eli Lilly's arguments in its motion to dismiss results in Graw abandoning her claim. "When a plaintiff fails to defend or pursue a claim in response to a motion to dismiss or summary judgment, the claim is deemed abandoned." *Fam. Dollar Stores of Missouri, LLC v. Tsai's Inv., Inc.*, No. 4:21-CV-572-SRW, 2022 WL 355109, at *14 (E.D. Mo. Feb. 7, 2022); *see also Little v. United States Dep't of Def.*, No. 4:21-CV-1309-JAR, 2022 WL 1302759 (E.D. Mo. May 2, 2022) (dismissing *pro se* plaintiff's complaint for failure to respond to defendant's arguments on a motion to dismiss); *Huskey v. Colgate-Palmolive Co.*, 486 F. Supp. 3d 1339 (E.D. Mo. 2020) ("[A] plaintiff's failure to address a defendant's arguments on a motion to dismiss operates as an abandonment of those claims.") (collecting cases).

Even if Graw had not abandoned her claim, she pleads no facts in her Amended Complaint that could be construed as supporting a products liability claim under either a strict liability or negligence theory. Therefore, I will dismiss her products liability claim with prejudice.

## F.     Count VII: Violations of FDA Clinical Trial Regulations

Finally, Count VII of Graw's Amended Complaint will be dismissed with prejudice. Dismissal is appropriate because she cites no specific FDA regulation

which gives her a private right to sue or creates a legal duty on behalf of Eli Lilly. Nor does she cite a particular FDA regulation that Eli Lilly violated. The failure to cite any specific FDA regulations that authorize a suit against Eli Lilly is fatal to Graw's claim.

Graw alleges her "attempts to reach [Study Metrix] staff in urgent distress went unanswered because the office was preparing for a Christmas party as admitted my Dr. Timony Smith. This gross disregard for participant safety directly violated federal clinical trial standards." ECF. No. 6 at 7. The Court's Order dated July 15th, 2025, noted, Graw "may not create a cause of action based on the Code of Federal Regulations if Congress has not provided a private right of action." ECF. No. 3 at 5-6, 6 n.2 (collecting cases). In her Response, Graw argues that she "does not assert a standalone private right of action under FDA regulations." ECF. No. 18 at 5. Instead, Graw states that she "references FDA regulations as evidence of the applicable duty of care and industry standards governing clinical trial sponsors." *Id.*

As previously addressed, the FDA regulations governing clinical trials do not create an independent duty of care in Graw's case, and she cannot base her negligence claim against Eli Lilly on vague references to federal regulations. *See, e.g.*, *Abney v. Amgen, Inc.*, 443 F.3d 540, 551 (6th Cir. 2006) ("[U]nder the FDA's regulatory scheme it is not the pharmaceutical companies that are charged with

ensuring trial participants' well being.") (citing 21 C.F.R. § 56.101); *Zeman v. Williams*, No. CIV.A. 11-10204-GAO, 2014 WL 3058298, at *4 (D. Mass. July 7, 2014) (dismissing claim where plaintiff alleged violations of "the Federal Food, Drug, and Cosmetic Act and regulations promulgated pursuant to said Act,' but there [were] no specifics about which provisions of the Act or regulations were violated or how").

Whether brought as a separate claim or part of her negligence claim, Graw fails to sufficiently allege violations of the FDA's clinical trial regulations or any other federal regulations.

### G.    Conclusion

After careful review of the pleadings, I find that Graw has failed to state claims for negligence, medical malpractice, lack of informed consent, intentional and reckless infliction of emotional distress, products liability, and violations of FDA clinical trial regulations.  Graw has been granted leave to amend her complaint once in this action, and I considered the additional allegations she raised in her Response to Eli Lilly's motion.  Therefore, I will grant Eli Lilly's motion and dismiss all of the claims in Graw's Amended Complaint with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Eli Lilly and Company's motion to dismiss [12] is **GRANTED**. Plaintiff Patti Jo Graw's Amended Complaint [6] will be **DISMISSED** with prejudice.

A separate Judgment in accordance with this Memorandum and Order will be entered on this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of February, 2026.

26